**MATTEL, INC., Plaintiff,**

v.

**GOLDBERGER DOLL MFG. CO., Inc., Defendant.**

**Civ. No. 61–C–428.**

United States District Court
E. D. New York.

Dec. 27, 1961.

518

Armand E. Lackenbach, New York City, for plaintiff, for the motion.

Booth, Baron & Doppelt, New York City, Frederick Doppelt, New York City, of counsel, in opposition.

RAYFIEL, District Judge.

The plaintiff, a California corporation, brought this action against the defendant, a New York corporation, for infringement of its trademark and for unfair competition, and has moved under Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an injunction *pendente lite*.

On July 2, 1958 the plaintiff filed an application with the United States Patent Office for a trademark for the name "Barbie" for use on a certain type of doll designated as "Class 22". The trademark was registered on December 1, 1959. The plaintiff advertised the doll and the trademark extensively and has had considerable public acceptance of its product.

Plaintiff's doll is 11½ inches tall, and comes dressed in a black and white striped bathing suit. It is packed in a box on which the name "Barbie" appears in script six times, and contains what are supposed to be representations of the doll dressed in various costumes.

The defendant's doll also is 11½ inches tall, and comes dressed in a striped bathing suit of black and white, blue and white or other colors in combination with white. It has the name "Babette" or "Miss Babette" printed on the package in three places. The name "Babette is in script in letters ranging from ⅜ of an inch to ¾ of an inch high. The name "Miss Babette" is in black letters ½ inch high. The front of the package is made of cellophane or some other transparent material to enable the purchaser to see the doll in the package, and the sides and back have multicolored lines printed thereon.

The defendant, on the argument of the motion and in its papers, has agreed to discontinue dressing its doll in the black and white striped bathing suit, stating that in the future it will use stripes of other colors in combination with white. It has also agreed to discontinue using the name "Babette" on its dolls, except when preceded by the word "Miss" in letters of similar size.

The plaintiff claims that the names "Babette" and "Miss Babette" are confusingly similar to its trademark "Barbie", and that the appearance of the defendant's doll, together with its striped bathing suit, "pony tail" hair, earrings and high heeled shoes are so similar to its "Barbie" doll as to constitute unfair competition.

In view of the defendant's willingness to discontinue the use of the name "Babette" on its dolls, except as aforesaid, I shall concern myself only with the plantiff's contentions respecting the use by the defendant of the name "Miss Babette." It is my considered opinion, based on the papers before me, that this name does not infringe on the plaintiff's trademark. "Barbie" and "Miss Babette" are not so similar as to deceive an ordinarily prudent purchaser. See Thomas Kerfoot & Co. v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214; Best & Co. v. Miller, 2 Cir., 167 F.2d 374. The boxes in which the dolls are packed differ completely in appearance, and the names thereon are clearly distinguishable. See Coca-Cola Co. v. Snow Crest Beverages, D.C., 64 F.Supp. 980, affd. 1 Cir., 162 F.2d 280; Lucien LeLong, Inc. v. Lander Co., 2 Cir., 164 F.2d 395.

Judge Swan, in the case of Best & Co. v. Miller, 2 Cir., 167 F.2d 374, at page 377, enunciated the test to be applied in the case of unfair competition when he said,

"The essence of the wrong of unfair competition lies in the sale of the goods

of one manufacturer or vendor for those of another or under such conditions as may lead the purchaser to think they are the goods of the other." He continued: "The trial judge correctly ruled that unfair competition is a question of fact, and the test is 'whether the public is likely to be deceived.' Applying this test he found no unfair competition."

Employing that test in the case at bar I find that it is not likely that the public will be deceived. As a matter of fact it appears from letters attached as exhibits to the answering affidavits herein that in many instances the defendant's doll is purchased by the public with knowledge that it is *not* a "Barbie" doll, due to the fact that the plaintiff cannot meet the demand for its product. Parenthetically, it may be stated that the plaintiff, in its papers submitted in support of the motion has admitted that the demand for its "Barbie" doll has far outstripped its capacity to produce it, and that it is building additional manufacturing facilities in order to meet the demand.

Typical of these letters is one from Ben Kaplan Company, of Atlanta, Georgia, addressed to the defendant, which stated:

"The Babette is a nice, clean doll but we are having a problem selling it. Our customers want the BARBIE DOLL and will not accept Babette until they are sure there are no more Barbie dolls in the area.

"Be assured that the consumer knows that he is buying Babette NOT Barbie."

I come now to the plaintiff's claim that certain of the defendant's customers are guilty of unfair competition in advertising the defendant's doll as "Barbee Type", or showing the defendant's doll at $1.98, with the legend "compare at $3.00." The defendant asserts that it has no control over its customers, or the manner in which they advertise its products. A contention similar to that made by the plaintiff herein was advanced in the case of Coca-Cola Co. v. Snow Crest Beverages, supra. Judge Wyzanski of the District Court of Massachusetts disposed of it (64 F.Supp. 980, at page 989,) as follows: "Before he can himself be held as a wrongdoer or contributory infringer one who supplies another with the instruments by which that other commits a tort, must be shown to have knowledge that the other will or can reasonably be expected to commit a tort with the supplied instrument. Nu-Grape Co. of America v. Glazier, 5 Cir., 22 F.2d 596, 597. *The test is whether wrongdoing by the purchaser 'might well have been anticipated by the defendant.'* Reid, Murdoch & Co. v. H. P. Coffee Co., 8 Cir., 48 F.2d 817, 819, last two lines.

"Conc. 10. There is no broader legal principle that always makes the defendant his brother's or his customer's keeper. Where the defendant markets a product, *defendant's accountability for his customer's wrongful use of that product turns on the issue whether a reasonable person in the defendant's position would realize either that he himself had created a situation which afforded a temptation to or an opportunity for wrong by l'homme moyen sensuel or was dealing with a customer whom he should know would be peculiarly likely to use the defendant's product wrongfully."* (Emphasis mine.)

In the instant case it is my opinion that the defendant could not have anticipated that its customers would use its products wrongfully. The advertisements in question do not represent the defendant's doll as a product of the plaintiff. The Gertz advertisement in the Long Island Press begins with the following words in bold white letters about ½ inch high on a black background: "Barbee-Type Sale." The advertisement in the Houston Post contains a representation of a doll, with the name "Babette" in script, in letters ranging in height from ¼ inch to ½ inch. I therefore reject the plaintiff's argument on that point.

The plaintiff's motion for an injunction pendente lite is in all respects denied.

Submit proposed findings of fact, conclusions of law and order in conformity herewith.