The GILLETTE COMPANY, Plaintiff,

v.

WILKINSON SWORD, INC. and Friedman Benjamin, Inc., Defendants.

No. 89 CIV. 3586 (KMW).

United States District Court, S.D. New York.

Aug. 11, 1992.

Kenneth A. Plevan, Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

Jeffrey Tamarin, Hall, Dickler, Lawler, Kent & Friedman, New York City, for defendants.

## MEMORANDUM OPINION
## AND ORDER

### KIMBA M. WOOD, District Judge.

Plaintiff in this Lanham Act case has already been awarded damages against defendant Wilkinson Sword, Inc. *The Gillette Co. v. Wilkinson Sword, Inc. and Friedman Benjamin, Inc.*, No. 89 Civ. 3586, slip op., 1992 WL 30938 (S.D.N.Y. Jan. 31, 1992). Plaintiff now moves for an award of damages against defendant Friedman Benjamin, Inc. For the reasons stated below, the Court grants plaintiff's motion.

## DISCUSSION

Familiarity with the facts of this case is assumed. The issue before us now is whether a defendant advertising agency is subject to an award of damages for violation of the Lanham Act, 15 U.S.C. § 1125(a).

This Court noted in *Noone v. Banner Talent Associates, Inc.*, 398 F.Supp. 260, 263 (S.D.N.Y.1975) (Metzner, J.), that § 43(a) "clearly states that it extends to any person who knowingly causes a false representation to be used in commerce." Remarking that the "booking agent" codefendant before him profited from transactions with the principal defendants in that case, Judge Metzner concluded that the booking agent would be liable under § 43(a) if it booked the principal defendants *knowing* that the defendants were using a false designation. *Id.*

The analysis of *Noone* is sound, and should apply generally to non-principal codefendants who knowingly participate in false advertising. Thus, advertising agencies are liable under § 43(a) at least where they knowingly participate in the false advertising. *See, e.g., Tambrands, Inc. v. Warner–Lambert Co.*, 673 F.Supp. 1190 (S.D.N.Y.1987) (advertising agency liable under § 43(a)).

Friedman Benjamin suggests that while it may be the case that: (i) § 43(a) governs the conduct of both the principal advertising corporations and the advertising agencies; (ii) § 43(a) subjects both the principal corporations and advertising agencies to liability in suits for injunctive relief; and (iii) § 43(a) imposes damages on principal advertising corporations for violation of § 43(a), nevertheless it is *not* the case that § 43(a) imposes damages on advertising agencies for violation of § 43(a). It points to no decision or statute maintaining such a distinction, and it offers no justification for the distinction in terms of the policies of the Lanham Act. While we acknowledge that Gillette cited no *direct* precedent for the imposition of damages, we note that a major treatise in this area strongly recommends the imposition of liability on advertising agencies in some cases. "An advertising agency is liable for deceptive advertising along with the advertiser when the agency was an active participant in the preparation of the ad and knew or had reason to know that it was false or deceptive." 4 R. Callman, The Law of Unfair Competition Trademarks and Monopolies (4th ed. & Apr. 1992 Supp.) (revised by L. Altman), § 22.12, Supp. 10.[1] More generally, we believe that damages are available as a remedy when an advertising agency

---

1. *Citing, In re American Home Products Corp.*, CCH Trade Reg.Rep., Transfer Binder: FTC Complaints and Orders 1979–1983 ¶ 21,874 (FTC Dkt. 8918, 1981); *In re Diamond Mortg. Corp.*, 118 B.R. 583 (N.D.Ill.1990). While these cases involve FTC proceedings, not private causes of action under the Lanham Act, they support the general principle that an advertising agency should not be able to escape liability for false advertising when it was a knowing participant in the commission of that tort.

violates § 43(a), because: (i) § 43(a) is applicable to advertising agencies and (ii) damages are available as a remedy for violation of § 43(a), *Centaur Communications Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1229 (2d Cir.1987) ("... we hold, as have the majority of the circuits have considered the question, that § 35 applies to § 43(a)"); *see also Gillette*, slip op. of Jan. 31, 1992, at 7–8 (discussing applicability of § 35(a)).

Noting that violation of § 43(a) is tortious conduct, *Procter & Gamble Co. v. Chesebrough–Pond's Inc.*, 747 F.2d 114, 117 (2d Cir.1984) ("it is now settled that" § 43(a) of the Lanham Act "creates a new statutory tort of broader scope" than the common law action for deceitful advertising), Gillette argues that an advertising agency should be held jointly and severally liable for damages with the advertising corporation. Gillette is correct in pointing out that the general rule in tort law is that joint tortfeasors are liable for the entire harm caused. *Restatement (Second) of Torts*, § 875. This Court has previously applied this general rule to non-principal parties in torts involving misrepresentation. *See, e.g., Superintendent of Insurance v. Freedman*, 443 F.Supp. 628, 638 (S.D.N.Y.1977), *aff'd*, 594 F.2d 852 (2d Cir. 1978). However, we note that any damages against the advertising agency must not exceed what would be available as a remedy to plaintiff under the Lanham Act against principal defendants (corporate advertisers). We therefore hold that where an advertising agency participated in the creation, development, and propagation of a false advertising campaign with knowledge of its falsity, in violation of § 43(a), the advertising agency is jointly and severally liable for the damages caused by that campaign, insofar as the ability to obtain such an award against the principal defendant would be available under the Lanham Act.

■ This Court's Amended Opinion and Order of January 31, 1992, found that Wilkinson was liable to Gillette under the Lanham Act for an award of damages of $953,-000 plus prejudgment interest. Hence, applying the reasoning above, we find that if Friedman Benjamin knowingly participated in the creation, development and propagation of the Ultra Glide false advertising campaign, then Friedman Benjamin and Gillette are jointly and severally liable for an award of damages of $953,000 plus prejudgment interest and costs. On the basis of the proceedings before this Court and the submissions made to this Court, the court found that Friedman Benjamin did participate in the creation, development and propagation of the Ultra Glide false advertising campaign with knowledge of its falsity, and we therefore hold that Friedman Benjamin is liable to Gillette for $953,000 plus prejudgment interest and costs, the liability being joint and several with Wilkinson.

■ Despite this conclusion, we recognize that defendant Friedman Benjamin may argue (but has not in its memorandum), that an imposition of damages on a principal defendant that is rooted in the "defendant's profit" category of § 35(a) should not be imposed jointly and severally on an advertising agency that did not enjoy that profit. The premise of this argument would be that the theoretical justification for "defendant's profit" award is *not* to make the plaintiff whole (which would warrant joint and several liability), but rather to prevent a wrongdoer from being unjustly enriched. If that is the case, the argument would continue, then a party who has not in fact enjoyed the profit in question should not be forced to disgorge that profit, and hence a codefendant should not be held jointly and severally liable.

This argument is untenable because it rests on the oversimplified contention that the purpose of a "defendant's profit" award is merely to prevent unjust enrichment. As the cases and the scholarly literature on this subject make clear, there are several justifications for awarding defendant's profit, only one of which is the unjust enrichment rationale. Of at least equal importance are deterring violations of the Lanham Act, and providing plaintiffs with a surrogate for compensation where they have suffered damage, but have not

been able to quantify the damage they have suffered without recourse to quantification of defendant's profit. A plaintiff who uses defendant's profit as a surrogate for plaintiff's loss is not necessarily conceding that it has not suffered a loss of sales; it is conceding at most the difficulty of tracing its losses. Hence, it does not follow from the use of defendant's profit as a surrogate that a purpose of the award is not to make the plaintiff whole. Making plaintiff whole is one of the purposes of an award calculated through the defendant's profit category of § 35(a). In light of the compensatory and deterrent goals of such an award, the imposition of joint and several liability is appropriate even where the award against the principal defendant is based on defendant's profit.

We recognize the possibility that an appellate court reviewing this decision may decide that, as a matter of law, advertising agencies should not be held jointly and severally liable for an award based on the principal defendant's profit, but should be held liable only for plaintiff's loss directly proved or for the advertising agency's profit, plus costs. We therefore note for the record that Gillette has not proved its costs directly, and has not offered any evidence regarding Friedman Benjamin's profits.

### CONCLUSION

For the reasons stated above, Friedman Benjamin, Inc. is jointly and severally liable with Wilkinson Sword, Inc., for the award to the Gillette Company of $953,000 plus prejudgment interest plus costs.

SO ORDERED.